IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| MARGARET TRUJILLO,<br><br>   Plaintiff,<br><br><br><br>   vs.<br><br><br><br>AMERICAN FAMILY MUTUAL<br>INSURANCE COMPANY,<br><br>   Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR PARTIAL<br>SUMMARY JUDGMENT<br><br><br><br><br><br>Case No. 1:08-CV-36-TS |

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Partial Summary Judgment.[1]

Defendant argues that 1) Plaintiff's cause of action for breach of the implied covenant of good

faith and fair dealing should be dismissed as a matter of law because her underinsured motorist

claim was fairly debatable and 2) Plaintiff's punitive damages claim should be dismissed as a

matter of law because Utah law does not allow plaintiffs to recover punitive damages in contract

claims.  For the reasons set forth below, the Court will grant the Defendant's Motion with respect

to both claims.

---

[1]Docket No. 69.

## II. Background

Plaintiff Margaret Trujillo alleges that Defendant American Family Mutual Insurance Company 1) breached the express policy contract provision by denying her claim for underinsured motorist ("UIM") coverage, 2) breached the implied covenant of good faith and fair dealing under the policy, and 3) inflicted severe emotional distress upon the Plaintiff through these intentional acts and omissions. Defendant requests summary judgment on the claim for breach of the duty of good faith and fair dealing and the claim for punitive damages, which apparently rises from the claim for emotional distress. The issue of whether Defendant breached the express terms of the policy by denying Plaintiff's claim is not currently before the Court.

The following facts are undisputed. On December 13, 2004, Plaintiff was involved in a car accident. She was treated the day after her accident for pain in her lower back, mid-back, and upper back. She underwent x-rays of her cervical and thoracic spine, which were interpreted as normal. On January 20, 2005, Plaintiff underwent x-rays of her right hip, from which Dr. Sorensen diagnosed a fracture. Plaintiff's injuries did not require surgery, and she took time off work (with occasional checkups) until April 4, 2005, when Dr. Sorensen again saw her. He noted that Plaintiff's hip fracture had fully healed in an acceptable position and that Plaintiff had no complaints of persistent hip pain, had a symmetrical range of motion in both hips, and could return to work without restrictions. The doctor did not diagnose or indicate any impairment.

On May 24, 2005, Plaintiff returned to Dr. Sorensen with complaints of hip pain. He diagnosed her with bursitis (inflammation) in the right hip and did not indicate a probable cause for the diagnosis at that time. Plaintiff attended two of a recommended twelve physical therapy

sessions, reported decreased pain, and has not been treated for hip pain since.

On December 18, 2007, an American Family claims adjuster noted receipt of an UIM demand from Plaintiff's attorney. The demand was premature, as not all liability insurers had tendered their policy limits. Plaintiff then sought compensation from liability insurers. Once Plaintiff collected from those insurers, she had received a total of $137,018.59, including $12,018.59 in personal injury protection from Defendant. She then renewed her UIM claim from Defendant based upon her hip injury, the 17% impairment rating that she had been assessed in October 2005, and a claim of inability to work as much as she could prior to the accident.

The Defendant sent Plaintiff's claim to its Medical Services Department for review. There, a nurse employed as part of Defendant's Medical Services Department raised questions regarding Plaintiff's impairment rating and loss of wages. These questions stemmed from Dr. Sorensen's report on April 4, 2005, where he noted no impairment, equal range of motion in both legs, a healed fracture, and no work restrictions. The Medical Services Review also expressed doubt regarding the wage loss, as there was a hospital report indicating that she was working less than a month after the accident, the doctor's report stating that she was released to work with no restrictions in April 2004, and another report noting that she was working four hours per day in October 2005.

After receiving this report, Defendant denied Plaintiff's claim, leaving Plaintiff the opportunity to send additional information and, if appropriate after additional review, have the denial revisited. Plaintiff initiated this action in response to the denial. During preparation for suit, Defendant also discovered that Plaintiff had numerous complaints of pain in both hips in the

years leading up to the subject accident and that her income had increased in the years immediately following the accident. However, because this information was gathered after the denial, it is not relevant to the issue of bad-faith denial that is currently before the Court.

## III. STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[2] In considering whether genuine issues of material fact exist, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[3] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[4] Once a motion for summary judgment is properly made and supported, "an adverse party may not rest upon the mere allegations or denials in his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial, if he does not so respond, summary judgment, if appropriate, shall be entered against him."[5]

---

[2] FED. R. CIV. P. 56(c).

[3] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[4] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Southwestern Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[5] FED. R. CIV. P. 56(e)(2).

# IV. DISCUSSION

## A. Breach of the Implied Covenant of Good Faith and Fair Dealing

*I. Standard of Review*

American Family first moves for summary judgment on Plaintiff's claim for breach of the implied covenant of good faith and fair dealing. Plaintiff and Defendant have a contractual relationship,[6] which includes "an implied covenant of good faith and fair dealing."[7] The Utah Supreme Court has held that this covenant "contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly and reasonably in rejecting or settling the claim."[8]

Defendant argues that it acted reasonably in rejecting Plaintiff's claim and, therefore, did not breach the implied covenant of good faith and fair dealing, compelling summary judgment on this claim. Plaintiff responds that summary judgment is not appropriate because Defendant violated the implied covenant by failing to diligently investigate and fairly evaluate the claim.[9] Plaintiff cites depositions of both an expert and witnesses stating that a proper investigation

---

[6]*See Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 800 (Utah 1985) (stating that "the relationship between an insurer and its insured in the first-party context is contractual rather than fiduciary").

[7]*Rawson v. Conover*, 20 P.3d 876, 885 (Utah 2001).

[8]*Beck*, 701 P.2d at 801; *see also Gibbs M. Smith, Inc. v. U.S. Fid. & Guar. Co.*, 949 F.2d 337, 344 (Utah 1997).

[9]Docket No. 69, at 3, 5, 15, 17, 21.

would require Defendant to independently "seek all facts supporting or refuting a claim."[10] Plaintiff also cites California case law stating that insurers have an obligation to fully inquire into all bases that might support the insured's claims.

Plaintiff's language sounds similar to the duty to "diligently investigate" that the Utah Supreme Court established in *Beck*.[11]  However, the application under Utah law is less strict than this language initially suggests.  Utah case law does not specify what constitutes diligent investigation, but it does state what constitutes reasonable rejection and is, therefore, not a breach of the implied covenant of good faith.  The Utah Supreme Court held, in *Prince v. Bear River Mutual Insurance Co.*,[12] that "[t]he denial of a claim is considered reasonable if the insured's claim is *fairly debatable*."[13]  This determination is a question of law.[14]  In specifying when a claim is considered fairly debatable, the court stated that "[i]f the evidence presented creates a factual issue as to the claim's validity, there exists a debatable reason for denial" thereby "eliminating the bad faith claim."[15]  The court then held that an insurance company that denied insurance benefits based on a doctor's report had not breached the implied covenant because "the expert's report creat[ed] a legitimate factual question regarding the validity of an insured's claim

---

[10]*Id.* at 21; *see also id.* at 33–34.

[11]*Beck*, 701 P.2d at 801.

[12]56 P.3d 524 (Utah 2002).

[13]*Id.* at 533 (emphasis added).

[14]*Id.* at 535.

[15]*Id.* (citing *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct. App. 1987)).

for benefits."[16]  If a claim is fairly debatable, the insurer "is entitled to debate it and cannot be held to have breached the implied covenant" of good faith and fair dealing for so doing.[17]

Plaintiff argues that before a claim can become fairly debatable, Defendant must demonstrate that it did not breach any express contractual obligations or implied obligations of good faith.[18]  However, this is a misstatement of Utah law.  First, with respect to the express contractual obligations, this Court could find that Defendant is required to pay UIM benefits under the contract while still finding that the claim was fairly debatable when originally denied.[19]  Additionally, breach of the express contractual obligations is not even an issue in the Motion for Partial Summary Judgment currently before the Court.  Finally, with respect to the implied obligations of good faith, the fairly debatable defense eliminates claims of bad faith; therefore, the Court need not find that all implied obligations were met before the Defendant is eligible for this defense, as the defense would then be meaningless.

Plaintiff also argues that Defendant's conduct should be evaluated as of the time that Defendant decided to deny Plaintiff's claim.  Plaintiff does not cite Utah law to support this assertion, but does cite cases from four other states by way of analogy.  These cases essentially

---

[16]*Id.* (citing *Callioux*, 745 P.2d at 842).

[17]*Id.* at 533–34 (citing *Morris v. Health Net of Calif., Inc.*, 988 P.2d 940, 941 (Utah 1999)).

[18]Docket No. 69, at 37.

[19]*See Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996) (stating, in response to a hypothetical where a claim later found to be proper was denied, "It is entirely consistent with [*Beck*] to hold that when an insured's claim is fairly debatable, the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so.").

state that insurers cannot rely on information that they acquired after denying a claim to defend their denial against charges of bad faith.[20]

Utah law does not speak directly to this issue, although *Billings* does apply the language from *Beck* in an analogous way. There the court stated that a first-party insurer who denies a claim that is later found to be proper should not be held liable for breach of the implied covenant if the claim was fairly debatable at the time it was denied.[21] This is because "the overriding requirement imposed by the implied covenant is that insurers act reasonably, as an objective matter, in dealing with their insureds,"[22] with a denial being considered reasonable if it was fairly debatable. Although the court's statement in *Billings* was posed so as to benefit an insurer, the principles underlying the statement support the Plaintiff's argument that Defendant's fairly debatable defense should be evaluated based on the information that it had available when denying the claim. The Court therefore examines Defendant's conduct as of that time.

*ii. Analysis*

Summary judgment is appropriate for this claim if the Court determines that Plaintiff's insurance claim was fairly debatable at the time that the claim was denied. Because summary judgment requires that the Court view all facts in the light most favorable to the nonmoving party, the Court must determine whether the undisputed facts present a factual issue as to the

---

[20] *See id.* at 39.

[21] *Id.* at 465.

[22] *Id.*

claim's validity or leave the issue "open to dispute or question."[23]

Here, the undisputed facts in the Defendant's possession at the time of denial include a doctor's report stating that the Plaintiff had no impairment, an equal range of motion in both legs, a healed fracture, and no work restrictions. There were also reports stating that Plaintiff was working four hours per day. Plaintiff argues that the nurse employed by Defendant who reviewed Plaintiff's claim and questioned the degree of impairment and loss of wages was unqualified to evaluate these issues. However, her determination was based on statements made by medical professionals whose qualifications have not been challenged.

Plaintiff further acknowledges that these materials raised questions regarding the validity of the UIM claim and proceeds to argue that Defendant should have resolved these questions before denying the claim.[24] However, the mere existence of a legitimate factual question makes an insurance claim fairly debatable and eliminates a cause of action for bad faith. Insurers are not held liable under Utah law for denying a fairly debatable claim, as they have the right to debate the claim. Here, suit was filed the same day the claim was denied, eliminating any debate which may have occurred. Because the undisputed facts leave legitimate questions regarding the validity of Plaintiff's claim, the claim is fairly debatable as a matter of law and Defendant cannot be found liable for breach of the implied covenant of good faith and fair dealing.

---

[23] *Prince*, 56 P.3d 524, 535 (citing 14 Lee R. Russ & Thomas F. Segalla, Couch on Insurance 3d § 204:28 (1999)).

[24] Docket No. 72, at 12, 15, 17.

## B. Claim for Punitive Damages

Under Utah law, "the relationship between an insurer and its insured in the first-party context is contractual rather than fiduciary."[25]  Therefore, a breach of implied or express duties creates a cause of action in contract and not in tort.[26]  As the Defendant correctly stated, under Utah law "punitive damages are recoverable only for torts, not for breach of contract."[27]  Punitive damages may be awarded in actions against an insurer who intentionally caused severe emotional distress or whose conduct constituted fraud.[28]  However, those claims do not appear to be at issue in this case.  Although Plaintiff's Complaint alleged intentional infliction of emotional distress,[29] Plaintiff did not respond to Defendant's motion for dismissal of the punitive damages claim, which stated that Plaintiff "has not asserted an independent cause of action sounding in tort."[30] By failing to "set forth specific facts showing that there is a genuine issue for trial,"[31] Plaintiff has tacitly agreed to summary judgment on the claim for punitive damages.

---

[25]*Billings*, 918 P.2d at 464–65 (citing *Beck*, 701 P.2d at 800).

[26]*Beck*, 701 P.2d at 800.

[27]*Smith v. Grand Canyon Expeditions Co.*, 84 P.3d 1154, 1161 (Utah 2003).

[28]*Beck*, 701 P.2d at 801 n.3.

[29]Docket No. 1, attachment 2, at 5.

[30]Docket No. 69, at ii; *see also* Docket No. 70, at 14–16 ("Inasmuch as [this] claim is based on the contractual duties owed between two parties, it does not give rise to a cause of action in tort.").

[31]FED. R. CIV. P. 56(e)(2).

## V. CONCLUSION

It is therefore

ORDERED that Defendant's Motion for Partial Summary Judgment (Docket No. 69) is GRANTED.  It is further

ORDERED that, pursuant to this Court's standard policy, this case be referred for a settlement conference by a separate order.

DATED   May 11, 2010.

BY THE COURT:

_____
TED STEWART
United States District Judge